**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 15 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID SACCOCCIO, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> CITY OF PHOENIX, a municipal corporation, JERI WILLIAMS, Chief of Police of the City of Phoenix Police Department, DOUGLAS MCBRIDE, <br><br> Defendants, <br><br> and <br><br> ERIC GOMEZ, City of Phoenix Police Officer, #7977, <br><br> Defendant - Appellee. | No. 25-66 <br><br> D.C. No. 2:20-cv-01141-DJH-CDB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted January 6, 2026
Phoenix, Arizona

Before: HAWKINS, RAWLINSON, and M. SMITH, Circuit Judges.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff, David Saccoccio ("Saccoccio"), sued the City of Phoenix Police and Officer Eric Gomez ("Gomez"), after Gomez shot Saccoccio with a less-lethal round during the first night of a mandatory curfew issued in response to the civil unrest in late May 2020. Saccoccio appeals the summary judgment dismissal of his excessive force claim. Reviewing de novo and viewing the evidence in the light most favorable to the nonmoving party, *Martinez v. High*, 91 F.4th 1022, 1027 (9th Cir. 2024), we reverse.

1. Excessive force claims are analyzed under the Fourth Amendment and its objective reasonableness standard, weighing the amount of force deployed against the government's interest in public safety. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989).

Beginning with the amount of force, the district court erred in determining that Gomez's deployment of the 40-millimeter oleoresin capsicum ("OC") round merely amounted to "minimal to moderate force." Instead, it amounted to "force which has the capability of causing serious injury" that is "permissible only when a strong governmental interest compels the employment of such force." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001). This is supported by the actual harm the OC round inflicted—it fractured a bone in Saccoccio's arm. *See Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012) (analyzing "[t]he actual harm caused to [Plaintiff]") (citation modified). It is also supported by the risk of harm. *See id.*

(analyzing risk of harm in addition to actual harm). Gomez knew from his training that if the OC round is used improperly, such as by targeting the head or firing at close range, it could cause death. Thus, even fired from further away, a reasonable juror could conclude that Gomez should have appreciated the risk of serious injury. Accordingly, a reasonable juror could conclude that the use of an OC round in this circumstance amounted to serious force.

Turning to the government's interest in the use of force, the three *Graham* factors[1] favor Saccoccio. First, Saccoccio's crimes were not severe. Gomez only had reason to suspect Saccoccio of committing nonviolent misdemeanors: attempting to trespass into a yard, obstructing the police, and violating the curfew. The evidence, including Gomez's own testimony that he had not seen Saccoccio engage in violence, and that he did not suspect Saccoccio of rioting at the time, creates a genuine dispute as to whether Gomez suspected Saccoccio of rioting in violation of Arizona Revised Statute § 13-2903.

Second, Saccoccio was not posing an immediate threat. Gomez admits he no longer feared for his or his fellow officers' safety once he saw that Saccoccio was moving away from them. Instead, Gomez testified that he acted out of fear for the

---

[1] *Graham*, 490 U.S. at 396 ("[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.") (citation modified).

safety of residents because he "[didn't] know people's intent." But the fear was not rooted in information particular to Saccoccio and was contradicted by Gomez's own testimony that he thought Saccoccio was scaling the fence to flee, not to harm someone. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1133 (9th Cir. 2019) (officer's inconsistent accounts created genuine dispute of fact). A reasonable juror could find that Gomez's abstract fear did not justify his use of force.

Third, Saccoccio's attempt at evasion was brief and "not particularly bellicose"—it did not justify Gomez's deployment of the OC round. *See Nelson*, 685 F.3d at 882 (citation modified).

In addition to the three *Graham* factors, this Court analyzes other relevant factors in assessing the government's interest. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1033–34 (9th Cir. 2018). Here, the preceding nights of civil unrest are part of the totality of the circumstances. *See Barnes v. Felix*, 605 U.S. 73, 80 (2025). But they did not justify the indiscriminate use of serious force against an individual for violating a misdemeanor curfew. Accordingly, a reasonable juror could find that the use of the OC round against a fleeing, non-dangerous, Saccoccio violated his Fourth Amendment right.

2. The district court also erred in determining, in the alternative, that Gomez's conduct was protected by qualified immunity. Saccoccio's right was clearly established at the time of the incident. While the right should not be defined at a high

a level of generality, "[t]here need not be a prior case directly on point, so long as there is precedent placing the statutory or constitutional question beyond debate." *S.R. Nehad*, 929 F.3d at 1140–41 (citation modified). The right at issue here is the right of an individual breaking curfew, but not in a crowd, nor posing any immediate threat to others, nor having committed any violent crime, and only briefly failing to comply with police, not to be shot with a munition that can cause serious injury.

Multiple cases can be read together to clearly establish a constitutional violation. *See Sanderlin v. Dwyer*, 116 F.4th 905, 917 (9th Cir. 2024) (two cases "together clearly established that [the officer's] use of force under the circumstances was unreasonable"). This Court's decision in *Nelson* established that officers must distinguish peaceful individuals from a violent crowd, even when using force to restore order, when the distinction is apparent. *See* 685 F.3d at 883. Here, this distinction was more than clear: Saccoccio was not in or near a violent crowd when Gomez shot him with the OC round. In addition, *Deorle* established that it is unlawful to use serious force against a person not posing an immediate threat to others. 272 F.3d at 1284–85 (the firing of a munition "capable of causing serious injury" was excessive compared to government interest) (citation modified). Accordingly, Gomez is not protected by qualified immunity at this stage of the litigation.

**REVERSED and REMANDED.**

25-66